SUSAN M. CHEHARDY, Judge.
 

 |2On July 7, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, Alton Marks, with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Defendant pled not guilty at arraignment.
 

 Defendant filed various pre-trial motions, including a motion to suppress evidence. The Court heard and denied the motion to suppress evidence on August 22, 2008.
 

 Defendant was tried by a twelve-person jury on October 22 and 23, 2008. The jury returned a verdict of guilty as charged. On November 6, 2008, the trial court sen
 
 *345
 
 tenced defendant to 15 years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant filed a timely motion for appeal, which was granted on December 5, 2008.
 

 The State filed a habitual offender bill of information alleging defendant to be a second felony offender. On March 11, 2009, defendant entered an admission to the allegations in the habitual offender bill. The trial court vacated the original sentence and imposed a habitual offender sentence of 15 years at hard labor, without | ^benefit of parole, probation, or suspension of sentence. Defendant has not appealed his habitual offender adjudication and sentence.
 

 Facts
 

 At trial, defendant stipulated that he was the same person who was previously convicted of attempted possession of heroin, a violation of La. R.S. 40:966 and 40:979, in case number 468-029 in Orleans Parish Criminal District Court. The trial court admitted State’s Exhibit 1, in globo, a certified copy of the conviction in Orleans Parish case number 468-029. The documents in that exhibit show defendant pled guilty to the offense on August 21, 2007, that he received a suspended sentence of two years, and that he was placed on one year of active probation and one year of inactive probation.
 

 Kawauna Ceasor testified at trial that she is a probation officer with the State of Louisiana’s Division of Probation and Parole. She is assigned to the Jefferson Parish district. Although defendant’s case was originally assigned to Patrick Green in the Orleans Parish District, his supervision was transferred to Ms. Ceasor after he changed his physical address to 1665 Alexander Street, Apt. A in Terrytown on August 31, 2007.
 

 Ms. Ceasor testified that her records show defendant was advised of the conditions of his probation when he initially reported to Mr. Green on August 27, 2007. Among those conditions was the requirement that defendant not be in any residence, structure, or vehicle that contains a firearm. Further, a probationer is prohibited from storing weapons on his premises, and he must ensure that visitors do not bring weapons into his home.
 

 Ms. Ceasor testified that she visited defendant at the Alexander Court address on October 10, 2007, and he allowed her into the apartment. He stated he was on home incarceration with a 6:00 p.m. curfew, and that he was complying |4with the restrictions imposed by Orleans Parish Drug Court. Ms. Ceasor visited defendant again at the Alexander Court apartment on January 8, 2008, and defendant again allowed her into the residence. There were some occasions when Ms. Ceasor attempted to make official visits to the apartment, and defendant was not at home. In those instances, Ms. Ceasor left her card, and defendant responded by telephoning her.
 

 Ms. Ceasor testified that she spoke with defendant by telephone on April 24, 2008, and he informed her he was having trouble accessing his mailbox at 1665 Alexander Court, and that he wanted Ms. Ceasor to mail future correspondence to his mother’s Charbonnet Street address. He also indicated that he had no other changes to report, including his physical address.
 

 In January, 2008, Ms. Ceasor was in an accident, and limited to desk duty. While she was on limited duty, Agent Bryan Poison assisted her in monitoring defendant’s ease. Mr. Poison testified that he had tried to contact defendant at the Alexander Court apartment three times since January of 2008. When Mr. Poison visited 1665 Alexander Court, Apartment A, on May 16, 2008, at 11:40 a.m, he knocked at
 
 *346
 
 the door, and Danielle Jones responded. Mr. Poison identified himself as a probation officer and explained that he was there as a courtesy to Ms. Ceasor to supervise the defendant. Ms. Jones responded that defendant had already left for a drug court meeting in New Orleans. Mr. Poison stepped inside the apartment to look around.
 

 As he walked into the apartment, he could see into every room on the first floor. Mr. Poison noticed an open pantry door next to the kitchen. On one of the shelves inside the pantry, Mr. Poison saw four boxes of ammunition inside another open cardboard box. Based on experience, he knew that two of the boxes contained AK47 ammunition, one box was .9 millimeter hollow point, and the | ¡..remaining box was .45 caliber hollow point ammunition. Mr. Poison testified that the ammunition caused him concern, since a probationer is not allowed to have a dangerous weapon or ammunition. He stated that his visit turned from an observation into a more thorough investigation once he saw the ammunition.
 

 Next, in order to protect himself and the child that resided in the apartment, Mr. Poison went upstairs to check the master bedroom. He opened the top drawer of a dresser next to the bed and found another box of .45 caliber hollow point bullets, with 11 rounds missing.
 

 At that point, Ms. Jones became very nervous. She was speaking to defendant on the telephone, and she gave the phone to Mr. Poison. Mr. Poison told defendant why he was at the apartment, and asked defendant to come there. Defendant said he could not go there because he had just finished with drug court, and he was on his way to work. Defendant telephoned the apartment two more times and stated that he was at work, but he refused to give Mr. Poison the address of his jobsite.
 

 As Poison was finishing his third telephone conversation with defendant, Ms. Jones headed toward the bathroom. Mr. Poison asked her to stop because he had not searched the bathroom yet, and, with five boxes of ammunition already found, he was concerned for his safety. Ms. Jones refused to comply. Mr. Poison handcuffed her, placed her on the end of the bed, and told her to stay there. He told her she was not under arrest, but was being detained for his safety as well as her own.
 

 Mr. Poison testified that he opened a closet door in the bedroom, and immediately saw the butt of a gun on the top shelf, partially covered by a pair of jeans and some hats. He took the gun and cleared it. There were ten rounds in the magazine and one in the chamber. The bullets were .45 caliber hollow points.
 

 | fiMr. Poison asked Ms. Jones several times whether she knew who owned the gun, and she said she did not. Mr. Poison asked Ms. Jones who was living in the apartment, and she responded that no one lived there except defendant, herself, and her child.
 

 Mr. Poison testified that he continued to search, but did not seize anything else. He called 9-1-1 and asked for a Jefferson Parish deputy. When the deputy ran a trace on the gun, the records did not show that the gun was reported stolen. Mr. Poison identified State’s Exhibit 12 as a photograph of the .45 caliber handgun he seized.
 

 Captain Ralph Dunne of the Jefferson Parish Sheriffs Office testified he is the commander of the Jail Management Section. He maintains records pertaining to arrestees and was formerly the supervisor at Intake Booking for the Jefferson Parish Correctional Center. Captain Dunne identified State’s Exhibit 5 as an appearance bond that defendant completed and signed
 
 *347
 
 at the correctional center upon his release from the facility on March 10, 2008. Captain Dunne noted that the address given on the bond is 1665 Alexander Court, Apartment A, in Gretna. He stated that the signer writes the address on the form. There is a provision on the form that states the signer swears, under penalty of law, that the information is true and correct, and that the signer is obligated to notify the court of any change of address.
 

 During his cross-examination of Captain Dunne, defense counsel produced Defense Exhibit 1. The officer identified it as a restraining order issued by a criminal commissioner against defendant in an unrelated domestic violence matter. The order commands defendant to stay away from 1665 Alexander Court, Apartment A. The restraining order was issued on February 29, 2008, and the expiration date was listed as May 29, 2008.
 

 17Panielle Jones testified for the defense at trial. She stated she lived with defendant at 1665 Alexander Court, Apartment A from October, 2007 through February, 2008. Her five-year-old daughter also lived there. Defendant did not rent the apartment with her, but he did stay there. In late February, 2008, Ms. Jones had a falling out with defendant. As a result, defendant was removed from her home and placed under a restraining order that prohibited him from going to her apartment.
 

 Ms. Jones testified that in May of 2008, a probation officer came to her house and asked her if defendant was there. She told him defendant did not live there anymore. The probation officer asked her if he could look around the apartment, and she said, “[F]ine.” When the officer began searching her things, she told him to stop. The officer became upset and handcuffed her. He told her if she did not allow him to do his job, she would go to jail for obstruction of justice.
 

 Ms. Jones testified that the probation officer found bullets in the downstairs pantry. He found a gun under some of defendant’s clothes. Ms. Jones testified that her child’s father had given her the gun and ammunition for protection after her neighbor’s house was burglarized. She got the gun sometime in early to mid-May of 2008. Ms. Jones testified that when the probation officer asked her who the gun belonged to, she told him it was hers.
 

 On cross examination, Ms. Jones stated that she had never fired the weapon. She also stated that she did not know how to load the bullets into the weapon.
 

 In his first assignment of error, defendant contends that the State failed to prove his guilt beyond a reasonable doubt, arguing that the State did not prove he had constructive possession of the gun found in the Alexander Court apartment.
 
 [1]
 
 The |sState responds that strong circumstantial evidence showed defendant was residing at the apartment at the time of the search, and that he had the requisite general intent to possess the weapon. In his reply brief, defendant argues the cir
 
 *348
 
 cumstantial evidence was not sufficient to prove guilty knowledge.
 

 Under
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence is sufficient if the conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 [2]
 

 In order to convict a defendant of violating La. R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense.
 
 [3]
 
 At trial, the parties stipulated to defendant’s prior felony conviction. Here, defendant does not challenge the evidence as to his prior conviction or the ten-year cleansing period.
 

 On appeal, defendant disputes the sufficiency of the evidence of possession and intent, i.e., guilty knowledge. Constructive possession is sufficient to satisfy the possessory element of La. R.S. 14:95.1.
 
 [4]
 
 The question of whether there is sufficient “possession” to convict is dependent on the facts of each case.
 
 [5]
 
 Constructive possession of a firearm exists when a firearm is subject to a person’s dominion and ^control.
 
 [6]
 
 Even where a person’s dominion over the weapon is only temporary in nature and control is shared, constructive possession exists.
 
 [7]
 
 But the mere presence of a defendant in the area of the seized contraband does not, by itself, prove he exercised dominion and control over the item such that it was in his constructive possession.
 
 [8]
 

 To establish possession of a firearm by a convicted felon, proof is required that the offender was aware that a firearm was in his presence, and that he intended to possess the weapon.
 
 [9]
 
 Such guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence.
 
 [10]
 

 Defendant argues the evidence at trial did not connect him with the gun found in the Alexander Court apartment. He maintains that he was not a lessee; and the evidence did not show he lived in the apartment after January of 2008, when his probation officer, Ms. Ceasor, visited with him there. Defendant further notes that the restraining order, which was issued following his dispute with Ms. Jones, prohibited him from going to the apartment after February 29, 2008.
 

 
 *349
 
 First, under the existing case law, a defendant does not to be co-lessee of an apartment to have constructive possession of contraband found in the apartment.
 
 [11]
 
 Next, the testimony and evidence showed defendant lived there with Ms. Jones as early as August 31, 2007, when he reported it as his residence to Mr. Green, his Orleans Parish probation officer. Defendant allowed Ms. Ceasor into the apartment on October 10, 2007 and January 8, 2008. Further, defendant listed his address as Alexander Court on an appearance bond signed when he was released from the correctional center on March 10, 2008.
 

 | |0On April 24, 2008, defendant reported to Ms. Ceasor that he was still living at the Alexander Court address. Further, defendant was monitored on house arrest at the Alexander Court residence.
 

 Mr. Poison testified that, while he was at the Alexander Court apartment on May 16, 2008, Ms. Jones did not give him any reason to believe defendant was not currently living there. On the contrary, Ms. Jones told Mr. Poison that defendant had just left the apartment to go to drug court. Ms. Jones also told Mr. Poison that she lived in the apartment with her daughter and defendant. Further, Ms. Jones testified that she did not own the gun or know that the gun was in the apartment.
 

 Furthermore, Mr. Poison stated that the gun was found in a bedroom closet, which also contained men’s clothing. More specifically, the gun was found under a large pair of men’s shorts and a pile of baseball caps. Ms. Jones stated during trial that the gun was under “Alton’s pants.”
 

 Ms. Jones also testified at trial that defendant lived with her in the apartment at one time, but that he moved out in late February, 2008 after the couple had a falling out. She testified she obtained the gun from her daughter’s father, Darrell Keys. She stated that when Mr. Poison asked her who the gun belonged to, she told him it was hers. Ms. Jones also admitted that she did not take lessons in how to operate the gun; and when the prosecutor questioned her on cross-examination regarding how the gun worked, Ms. Jones could not show him. Ms. Jones stated that any discrepancy between her testimony and Mr. Poison’s testimony was caused by Mr. Poison being untruthful.
 

 Here, the jury apparently found the testimony of the State’s witnesses to be more credible, and discredited Ms. Jones’s testimony that the gun was hers and that defendant did not live in her apartment after February, 2008. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, |nin whole or in part, the testimony of any witness.
 
 [12]
 
 The credibility of witnesses will not be re-weighed on appeal.
 
 [13]
 
 Based on the State’s evidence, the jury could have reasonably inferred that defendant was living at the Alexander Court apartment in circumvention of the restraining order, and that he knew the gun was in the bedroom closet.
 

 Courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant. For instance, in
 
 State v. Jackson,
 
 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934,
 
 writ denied,
 
 98-1454 (La.10/16/98), 726 So.2d 37, this Court held the evidence was sufficient to prove the defendant knowingly possessed the gun
 
 *350
 
 found in his bedroom under the mattress where he regularly slept. Despite the argument that other friends and relatives had stayed in the defendant’s bedroom during a recent visit, and the gun could have belonged to them, this Court found the evidence was sufficient to affirm the defendant’s conviction for possession of a firearm by a convicted felon.
 

 In
 
 State v. Paul,
 
 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 349-50, this Court found the State proved beyond a reasonable doubt that the defendant knowingly possessed a gun found between the pillows in the room where he slept when he stayed at the residence. Similarly, in this case, it appears the State put on sufficient evidence that defendant lived at the Alexander Court address at the time of the search, and that the gun found in the closet with his clothes was under his dominion and control.
 

 Here, the State was required to prove that defendant had dominion and control over the gun. Our review reveals that the State provided proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of possession and intent, beyond a reasonable doubt.
 

 12In his second assignment of error, defendant complains that the trial court erred in denying his motion to suppress evidence. He argues the evidence was suppressible because Mr. Poison had neither consent nor reasonable suspicion to enter the Alexander Court apartment. Defendant further contends that Mr. Poison’s discovery of ammunition in the kitchen pantry did not give rise to reasonable suspicion of criminal activity that would allow him to conduct a more thorough search of the residence. The State responds that Mr. Poison conducted a lawful search of the residence in furtherance of his duties as a probation officer, and that the gun was legally seized.
 

 The Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by a specific exception to the warrant requirement.
 
 [14]
 
 When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving the admissibility of any evidence seized without a warrant.
 
 [15]
 

 This Court has recognized that:
 

 [a]n individual on parole or probation does not have the same freedom from governmental intrusion into his affairs as does the average citizen. A probationer must necessarily have a reduced expectation of privacy, which allows for reasonable warrantless searches of his person and residence by his probation officer, even though less than probable cause may be shown.
 

 Saulsby,
 
 04-880, p. 4 (La.App. 5 Cir. 12/28/04), 892 So.2d 655, 657-58. The reduced expectation of privacy derives from the probationer’s conviction and his agreement to allow a probation officer to investigate his activities in order to confirm that he is [^abiding by the provisions of his probation.
 
 Id.
 
 Simply stated, a probation
 
 *351
 
 er’s freedom is conditioned upon the provisions of his probation.
 
 [16]
 

 A probationer has essentially the same status as a parolee.
 
 [17]
 
 A parolee agrees to submit to unannounced visits from his parole officer as a condition of parole.
 
 [18]
 
 While the decision to search must be based on something more than a mere hunch, probable cause is not required, and only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search.
 
 [19]
 

 A probation officer, however, may not use his authority as a subterfuge to help another police agency that desires to conduct a search, but lacks probable cause.
 
 [20]
 
 The parole or probation officer must believe the search is necessary in the performance of his duties and is reasonable in light of the total circumstances.
 
 [21]
 
 In determining whether a warrantless search by a probation or parole officer was reasonable, the court must consider: 1) the scope of the particular intrusion; 2) the manner in which it was conducted; 3) the justification for initiating it; and 4) the place in which it was conducted.
 
 [22]
 

 At the hearing on defendant’s motion to suppress evidence, the State produced the testimony of probation officer Bryan Pol-son. Mr. Poison stated that he visited 1665 Alexander Court, Apartment A, in Gretna, on May 16, 2008, in order to assist defendant’s probation officer, Kuawana Ceasor. Mr. Poison had been to the apartment on three or four other occasions, but no one had responded when he | uknocked on the door.
 
 [23]
 
 This was intended as a supervisory visit, since defendant had not been seen in four months. A copy of defendant’s probation record, introduced at trial, shows defendant was instructed that he was required to submit to a home visit by his probation officer “each and every month” as a condition of his probation.
 

 Mr. Poison testified that defendant’s probation file indicated he had been using the Alexander Court apartment as his official address. When Mr. Poison knocked on the door this time, a woman asked who was there. He responded that he was a probation officer.
 

 Several moments passed, and Danielle Jones opened the door. She questioned Mr. Poison about who he was and what he was doing there. He explained that he was a probation officer, and he was conducting a courtesy supervision of defen
 
 *352
 
 dant as a favor to Ms. Ceasor, defendant’s assigned probation officer. Ms. Jones then opened the door wider, and Mr. Poison stepped inside the apartment. Ms. Jones told Mr. Poison that defendant was not in the apartment at that time. When Mr. Poison asked Ms. Jones who lived in the apartment, she told him that only she, her daughter, and defendant lived there.
 

 During a cursory walk-through on the first floor of the residence, Mr. Poison noticed the door to the kitchen pantry was open. Through the open doorway, Mr. Poison saw four boxes of ammunition on one of the pantry shelves. Based on that finding, as well as defendant’s background, Mr. Poison decided to conduct a more in-depth search of the apartment. He went upstairs and discovered a gun on a closet shelf in the master bedroom. The butt of the weapon was sticking out from a pair of men’s blue jeans and some hats.
 

 Iifiln denying the suppression motion, the trial court commented that Mr. Poison did not overstep his authority in entering the residence to check on a probationer. Once the officer saw the ammunition (i.e. contraband) in plain view, he was justified in continuing the search.
 

 Defendant maintains that Mr. Poison did not have reasonable suspicion to enter the apartment, and that Ms. Jones did not consent to a search of her apartment. Therefore, defendant argues, the officer’s entry was unlawful, and the evidence seized by Mr. Poison was suppressible.
 

 Consent to search constitutes one of the exceptions to the probable cause and warrant requirements of the Fourth Amendment when it is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.
 
 [24]
 
 The State bears the burden of proving the consent has been freely and voluntarily given.
 
 [25]
 
 Vol-untariness is a question of fact to be determined by the trial court based on the totality of the circumstances.
 
 [26]
 

 In the instant case, Mr. Poison knocked on the apartment door, and Ms. Jones, a resident of the apartment, responded by opening the door
 
 [27]
 
 Mr. Poison testified that when he told Ms. Jones he was there for a supervisory visit, she opened the door wider and allowed him to step inside. More importantly, Ms. Jones testified at trial that Mr. Poison asked if he could step inside that apartment, and she responded, “[F]ine.” Ms. Jones further testified that when Mr. Poison asked her if he could look around, she again responded, “[F]ine.” At that point, Ms. Jones verbally consented for Mr. Poison to enter the premises.
 

 [,(After entering the apartment, Mr. Poison saw the ammunition in plain view in the open pantry. Under the “plain view” exception to the warrant requirement, police may seize evidence in plain view when: 1) there is prior justification for an intrusion into the protected area and 2) it is immediately apparent, without
 
 *353
 
 close inspection, that the items seized are evidence or contraband.
 
 [28]
 

 In the instant case, Mr. Poison was rightfully in the area where he spotted the ammunition, and he immediately recognized it as contraband. He testified at trial that he was concerned when he saw the ammunition, because it was a violation of defendant’s probation to possess dangerous weapons, including ammunition. Once Mr. Poison saw the ammunition, he had reasonable suspicion to conduct a more thorough search of the apartment. Thus, it appears Mr. Poison lawfully seized the gun he found in the bedroom closet. Based on the foregoing, we cannot say that the trial court erred in denying defendant’s motion to suppress the evidence.
 

 Finally, as is our routine practice, the record was reviewed for errors patent. La. C. Cr. P. art. 920.
 
 [29]
 
 The minute entry for August 20, 2008 (R., p. 6) is duplicative of the minute entry for August 22, 2008. (R., p. 9). Based on the motion hearing transcript, which is dated August 22, 2008, it appears the minute entry bearing that date is the correct one.
 
 [30]
 
 Additionally, there are two different minute entries for August 21, 2008. (R., pp. 7-8). One of those (R., p. 8), is duplicative of the minute entry for August 22, 2008. We instruct the district court to order the correction of the minute entries to accurately reflect the court proceedings on those days. Defendant’s conviction is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary.
 
 Id.
 
 Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial.
 
 Id.
 

 [2]
 

 .
 
 Jackson,
 
 443 U.S. at 319, 99 S.Ct. at 2789;
 
 State v. Ortiz,
 
 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998);
 
 State v. Polizzi,
 
 05-478, p. 9 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 310,
 
 writs denied,
 
 06-1052 (La.11/3/06), 940 So.2d 660, and 08-2006 (La. 1/30/09), 999 So.2d 751.
 

 [3]
 

 .
 
 State v. Watson,
 
 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
 

 [4]
 

 .
 
 State v. Mose,
 
 412 So.2d 584, 586 (La. 1982);
 
 State v. Ware,
 
 01-194, pp. 4-5 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 499.
 

 [5]
 

 .
 
 State v. Johnson,
 
 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998.
 

 [6]
 

 .
 
 Id.
 

 [7]
 

 .
 
 Johnson,
 
 03-1228 at 5, 870 So.2d at 999;
 
 State v. Blount,
 
 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775.
 

 [8]
 

 .
 
 Johnson,
 
 03-1228 at 6, 870 So.2d at 999.
 

 [9]
 

 .
 
 State v. Lee,
 
 02-0704, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593,
 
 writ denied,
 
 03-0535 (La. 10/17/03), 855 So.2d 755.
 

 [10]
 

 .
 
 Johnson,
 
 03-1228 at 5, 870 So.2d at 998.
 

 [11]
 

 .
 
 State v. Ware, 795
 
 So.2d at 499.
 

 [12]
 

 .
 
 State v. Lathers,
 
 03-941, p. 7 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 886.
 

 [13]
 

 .Id.
 

 [14]
 

 .
 
 State v. Manson,
 
 01-159, pp. 8-9 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 757,
 
 cert. denied,
 
 01-2269 (La.9/20/02), 825 So.2d
 
 1156.
 

 [15]
 

 . La. C. Cr. P. art. 703(D);
 
 State v. Parnell,
 
 07-37, p. 9 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097,
 
 writ denied,
 
 07-1417 (La. 1/7/08), 973 So.2d 733.
 

 [16]
 

 .
 
 State v. Young,
 
 07-988, p. 6 (La.App. 5 Cir. 6/19/08), 988 So.2d 759, 763,
 
 writ denied,
 
 08-1599 (La.3/27/09), 5 So.3d 139, citing
 
 United States v. LeBlanc,
 
 490 F.3d 361 (5th Cir. 2007).
 

 [17]
 

 .
 
 State v. Malone,
 
 403 So.2d 1234, 1238 (La. 1981);
 
 State v. Saulsby,
 
 04-880 at 4, 892 So.2d at 657.
 

 [18]
 

 .
 
 State v. Robertson,
 
 06-167, p. 13 (La.App. 3 Cir. 7/16/08), 988 So.2d 294, 303;
 
 State v. Wesley,
 
 28,941, p. 8 (La.App. 2 Cir. 12/13/96), 685 So.2d 1169, 1174,
 
 writ denied,
 
 97-0279 (La. 10/10/97), 703 So.2d 603.
 

 [19]
 

 .
 
 State v. Robertson, supra; State v. Epperson,
 
 576 So.2d 96, 99 (La.App. 2 Cir. 1991),
 
 writ denied,
 
 580 So.2d 920 (La. 1991).
 

 [20]
 

 .
 
 State v. Malone,
 
 403 So.2d at 1238.
 

 [21]
 

 .
 
 State v. Saulsby,
 
 04-880 at 4, 892 So.2d at 658.
 

 [22]
 

 .
 
 State v. Malone,
 
 403 So.2d at 1239;
 
 State v. Young,
 
 07-988 at 8, 988 So.2d at 763-764.
 

 [23]
 

 . Defendant's probation record shows Ms. Ceasor visited with defendant at the Alexander Court apartment on January 8, 2008. After that, Mr. Poison made three unsuccessful attempts to find defendant there. Thus, May 16, 2008 was Mr. Poison's fourth attempt to visit Mr. Poison at that address.
 

 [24]
 

 .
 
 State v. Robinson,
 
 08-25, p. 6 (La.App. 5 Cir. 5/27/08), 986 So.2d 716, 720,
 
 writ denied,
 
 08-1527 (La.3/4/09), 3 So.3d 470.
 

 [25]
 

 .
 
 State v. Owen,
 
 453 So.2d 1202, 1206 (La. 1984).
 

 [26]
 

 .
 
 State v. Gomez,
 
 06-417, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 86.
 

 [27]
 

 .When a door is opened in response to a knock, it signifies the occupant's consent to confront the caller, and there is no compulsion, force or coercion involved.
 
 State v. Warren,
 
 05-2248, pp. 6-7 (La.2/22/07), 949 So.2d 1215, 1222;
 
 State v. Haywood,
 
 00-1584, p. 6 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 575.
 

 [28]
 

 .
 
 Horton v. California,
 
 496 U.S. 128, 135-136, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990).
 

 [29]
 

 .
 
 State v. Oliveaux,
 
 312 So.2d 337 (La. 1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990)
 

 [30]
 

 .Where there is a discrepancy between the transcript and the minute entry, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La. 1983).