683 So.2d 885 (1996)
STATE of Louisiana
v.
Carla THOMAS.
No. 96-K-2006.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1996.
Harry F. Connick, District Attorney for Orleans Parish, Kevin Gillie, Assistant District Attorney for Orleans Parish, New Orleans, for Relator.
Kara Williams, New Orleans, for Respondent.
Before CIACCIO, JONES and LANDRIEU, JJ.
CIACCIO, Judge.
On the application of the State of Louisiana, we grant certiorari to consider whether the trial court erred in granting defendant, Carla Thomas', motion to suppress the evidence. On August 6, 1996, the State filed a bill of information charging the defendant with one count of possession of cocaine. She filed a motion to suppress the evidence arguing that the warrantless search conducted by probation officers was unreasonable under the Fourth Amendment.
The only witness at the motion hearing was a probation and parole officer, Linda Morantine. She stated that the defendant came to her office on June 24, 1996. A routine urine test was conducted. The defendant tested positive for cocaine. Morantine then informed the defendant that she was going to be arrested, and the police were called. The defendant had been handcuffed prior to the drug test; she had also emptied her pockets of all belongings, including car *886 keys. Both of these actions were required by the policy of the probation office to ensure the accuracy of the urine test.
While Morantine was waiting for the police, two other probation officers conducted a search of the vehicle which the defendant had driven to the office. The agents asked the defendant what car she was driving and she told them it was a Blazer. The agents took the defendant's keys, after having her identify them. The agents found the defendant's purse in the Blazer. They brought it back into the probation office and emptied it. They discovered a matchbox which contained a small glass container with burnt residue on it. The defendant was arrested for possession of drug paraphernalia.
According to Morantine's testimony, the search of the defendant's vehicle and purse was routine because of the positive drug test. She explained that she and her fellow probation officers "usually will search the premises, stuff like that, to see if we find anything, drug paraphernalia, or anything like that."
After hearing Morantine's testimony, the trial court granted the motion to suppress. The transcript does not reflect the court's reasons for judgment.
The State makes two arguments in its writ application. First, the State contends that, because the defendant is a probationer, the agents were required to have only a reasonable suspicion of criminal conduct because a probationer has a reduced expectation of privacy, and that no warrant was required. The State's second argument is that the cocaine would have inevitably been discovered during an inventory search of the automobile.
The law regarding a probationer's expectation of privacy is well-settled in Louisiana, as has been stated several times by the Second Circuit. Probationers and parolees occupy essentially the same status. Both have a reduced expectation of privacy which allows reasonable warrantless searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown. This reduced expectation of privacy evolves from a probationer's conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation. Nevertheless, a probationer is not subject to the unrestrained power of the authorities; a search of a probationer may not be a subterfuge for a police investigation. A warrantless search of a probationer's property is permissible when:
[I]t is conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the reasonableness of a warrantless search, we [a reviewing court] must `consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.' [State v.] Malone, supra, [403 So.2d 1234 (La.1981)] at 1239.
State v. Shields, 614 So.2d 1279, 1282-83 (La.App. 2nd Cir.1993) writ denied 620 So.2d 874. See also cases cited therein. Although the State still bears the burden of proof because the search was conducted without a warrant, when the search is conducted for probation violations, the State's burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. Malone; Shields.
In Shields, the probation officer received information that his probationer was seen in possession of firearms and had been followed to the block where his residence was. The tip was relayed to the probation officer by the police officer who had received it; the police officer did not act on it directly because he felt there were insufficient grounds to obtain a search warrant. The probation officer searched the probationer's residence after observing scales and a police scanner in plain view.
In its application, the State correctly summarizes the facts of two Second Circuit cases, State v. Vailes, 564 So.2d 778 (La.App. 2nd Cir.1990) and State v. Epperson, 576 So.2d 96 (La.App. 2nd Cir.1991) writ denied 580 So.2d 920, both of which involved a search of the probationer's residence by his probation officer. In Vailes the probation officer had received a tip from a confidential informant *887 that the probationer was selling and using drugs and possibly possessed firearms in his home. In Epperson the search arose after the probation officer, on a routine visit to the defendant's home, saw marijuana in plain view. Subsequent searches of the probationer's residence occurred, first, after the officer had received a tip and, secondly, when the officer arrived to execute an arrest warrant and defendant was in possession of a large sum of cash.
The State also cites State v. Malone, 403 So.2d 1234 (La.1981), in which the probation officer discovered marijuana growing in a wooded area adjacent to the home of the probationer whom he had come to meet. The officer was led to the marijuana by the fact that a garden hose was running from the probationer's home into the woods and by his personal knowledge that marijuana was being grown in the general vicinity.
Applying the factors enunciated in Malone, 403 So.2d at 1239, we must review the facts of the instant case with consideration to the scope of the intrusion in the defendant's privacy, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. Here, the defendant had already been placed under arrest when the officers took her car keys and searched the vehicle and her purse. A person generally has a lesser expectation of privacy in an automobile than a home, although the search of the defendant's purse comes closer to being a search of her person. Nevertheless, she was required, before taking the urine test, to empty her pockets and to be handcuffed. The additional search of her purse after formal arrest must be considered a minimal further intrusion into her privacy. As to the manner and place, the search was clearly not a subterfuge for a criminal investigation. Only probation officers were involved, and the entire incident occurred at the probation office.
The justification for the search was that a search is routine upon discovering a violation of probation, more particularly a positive test for cocaine which would indicate that a violation has already occurred. A similar policy was upheld by the Supreme Court in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In Griffin, the probationer's home was searched without a warrant pursuant to a Wisconsin regulation which stated that it was a violation of probation to refuse to consent to a search of one's residence. The probation office had received a tip that there might be guns in the probationer's apartment. The Wisconsin Supreme Court upheld the search on the grounds that it did not violate the Fourth Amendment because there were reasonable grounds for the search. The U.S. Supreme Court, while not disagreeing with the Wisconsin court, chose to affirm the search on the basis that "it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." Id. at 873, 107 S.Ct. at 3168. The Court noted that the probation system itself presents "special needs" beyond normal law enforcement. The Court further noted that a warrant requirement would interfere with that system, "setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires;" further the delay inherent in securing a warrant "would make it more difficult for probation officials to respond quickly to evidence of misconduct" and "would reduce the deterrent effect that the possibility of expeditious searches would otherwise create...." Id. at 876, 3170. The Court also analogized requiring a probation officer to obtain a warrant when there is a suspicion of a probation violation to requiring a parent to obtain judicial approval for a search of a minor child's bedroom; such a requirement would impair the parental custodial authority. The Court also emphasized that a probation officer is not a police officer, and that a probation officer is actually an employee of a Social Services department charged with protecting the public interest and with working for his "client's" welfare.
Morantine testified that she and her fellow officers conduct searches when faced with an actual probation violation. To use the United States Supreme Court's analogy, parents confronted with proof positive of their child's drug use would have a reasonable suspicion and ample justification to search that child's room and personal belongings for additional *888 drugs or drug paraphernalia. Similarly, a search of the defendant's vehicle and belongings after she tested positive for drugs, done in accordance with the usual practice of the probation office, is entirely reasonable and does not require a warrant.
Because we find that the probation officers' warrantless search was reasonable under the circumstances, we need not consider the State's second argument that the cocaine would have inevitably been discovered during an inventory search.
Accordingly, for the above reasons, we grant the application of the State, reverse the ruling of the trial judge and deny the defendant's motion to suppress the evidence. The case is remanded to the trial court for further proceedings.
WRIT GRANTED; JUDGMENT REVERSED AND REMANDED.
JONES, J., concurs in the result.