FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal matter, defendant Glenn R. Cosie appeals his convictions for possession of cocaine with intent to distribute and possession of a firearm by a convicted felon. The defendant contends that the trial court erred by denying his motion to suppress evidence. For the reasons that follow, we affirm the defendant’s conviction and sentence.
 

 PROCEDURAL HISTORY
 

 On August 22, 2008, the state charged the defendant with two counts of possession of a firearm by a convicted felon (Counts 1 and 2) and one count of posses
 
 *317
 
 sion with intent to distribute cocaine (Count 3), violations of La.R.S. 14:95.1 and La.R.S. 40:967(A) respectively. The defendant pleaded not guilty as to all counts at arraignment.
 

 The defendant filed a motion to suppress evidence. The trial court denied the motion on January 7, 2009. However, the trial court allowed the defendant to reurge the motion prior to trial on August 5, 2009. After allowing the defendant to |sreurge the motion, the trial court again denied the motion. The defendant thereafter withdrew his not guilty pleas and pleaded guilty as charged to all three counts. The defendant reserved the right to challenge the trial court’s rulings on the motion to suppress pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 On August 6, 2009, the trial court sentenced defendant to fifteen years imprisonment at hard labor on Counts 1 and 2 and twenty years imprisonment at hard labor on Count 3. The trial court ordered that the sentences run concurrently. The trial court additionally ordered that the sentences concurrently with “any parole revocation that [the defendant] may face based on the pleas.” This timely appeal followed.
 

 FACTS
 

 The following facts were developed from the testimony presented at the hearing on the motion to suppress.
 

 Katherine Walthall is employed by the state as a probation and parole officer. Agent Walthall was the defendant’s parole officer on June 27, 2008. At the time, the defendant was on parole for possession with intent to distribute cocaine. Agent Walthall testified that she received a phone call from the Kenner Police Department informing her that the defendant had been spotted leaving a high crime area with $16,000.00 hidden in his motorcycle. The Kenner Police Department also indicated to Agent Walthall that the defendant appeared to be very nervous during the traffic stop.
 

 Agent Walthall testified at trial that, in her opinion, she had reasonable suspicion to search the defendant’s residence based on the information she received from the Kenner Police Department. Agent Walt-hall therefore asked several Kenner Police narcotics detectives, including Detective Kevin Treigle, to accompany her to the defendant’s residence. On June 27, 2008, Agent Walthall ^proceeded to the defendant’s residence and knocked on the front door. The defendant’s mother answered the door. Agent Walthall asked the defendant’s mother if she could see the defendant. The defendant’s mother told Agent Walthall that the defendant was not at home. Agent Walthall thereafter asked the defendant’s mother if she and Detective Treigle could verify that the defendant was not at home. The defendant’s mother responded affirmatively and agreed to take Agent Walthall to the defendant’s room.
 

 Agent Walthall and the defendant’s mother went to the defendant’s bedroom. The defendant was not present. When Agent Walthall entered the defendant’s bedroom, she saw a black duffel bag in plain view next to the defendant’s bed. Agent Walthall testified that bag was open and that she could clearly see a digital scale sitting on top of other items in the bag. Agent Walthall testified that digital scales are often used for weighing illegal narcotics.
 

 After Agent Walthall saw the scale, she examined the contents of the duffel bag. She found a razor blade, several clear plastic bags, and a second digital scale. One of the digital scales had a white powder substance on its surface that later field-tested positive for cocaine. Agent Walt-hall also found a spoon and a Pyrex bowl
 
 *318
 
 containing water and an off-white rock substance on the floor of the defendant’s bedroom. The off-white substance Agent Walthall recovered from the Pyrex bowl later field-tested positive for cocaine. Agent Walthall testified that digital scales are often used for weighing illegal narcotics and that plastic bags are commonly used to package narcotics. Agent Walthall further testified that razor blades are commonly used for cutting and separating narcotics.
 

 On cross-examination, Agent Walthall testified that she had been to the defendant’s home once prior to June 27, 2008. She also testified that she asked the defendant’s mother if she could search her home. Defense counsel attempted to |fiask Agent Walthall whether she knew if Ken-ner Police had probable cause to stop the defendant on June 21, 2008. However, the state objected to the line of questioning and the trial court sustained the objection.
 

 Detective Treigle testified that he was informed that Officer Shane Tilford of the Kenner Police Department stopped the defendant in an area known for narcotics trafficking. Officer Tilford informed Detective Treigle that the defendant was in possession of $16,000. Detective Treigle thereafter contacted Agent Walthall and offered his assistance. He participated in the residence check at the defendant’s residence on the morning of June 27, 2008. Detective Treigle and another Kenner Police detective secured the rear of the defendant’s residence while Agent Walthall proceeded to the front door. After Agent Walthall made contact with the defendant’s mother, Detective Treigle entered the defendant’s residence.
 

 Detective Treigle thereafter aided Agent Walthall in searching the defendant’s bedroom. Detective Treigle eon-firmed that he and Agent Walthall recovered a razor blade, several clear plastic bags, two digital scales, and a Pyrex jar from the defendant’s bedroom. Detective Treigle testified that in his experience, Pyrex containers are commonly used to manufacture crack cocaine.
 

 Detective Treigle and Agent Walthall also observed a safe on the top shelf in the defendant’s bedroom closet. The safe was locked. Detective Treigle subsequently applied for and obtained a search warrant for the defendant’s residence. When Detective Treigle arrived at the defendant’s residence with the search warrant, the defendant was not present. However, the defendant arrived shortly thereafter. Detective Treigle advised the defendant of his
 
 Miranda
 

 [1]
 

 rights and placed the defendant under arrest for the contraband located in his bedroom. After searching the defendant, Detective Treigle detective found $433.00 and a set |6of keys on the defendant’s person. Detective Treigle used one of the keys to open the safe in the defendant’s bedroom. Inside the safe were six stacks of one hundred dollar bills totaling $6,200.00. It was later determined that two of the one-hundred dollar bills were counterfeit.
 

 Detective Treigle thereafter continued to search the defendant’s residence. On a white leather sofa in the garage, Detective Treigle discovered a .40 caliber Ruger pistol and a .22 caliber derringer-style double-barreled pistol in plain view. The .40 caliber Ruger pistol was loaded.
 

 Kenner Police then took the defendant to the Kenner jail and advised him of his
 
 Miranda
 
 for rights a second time. When Detective Treigle told the defendant that he was going to attempt to seize the money found in his apartment, the defendant told Detective Treigle that he works at
 
 *319
 
 Chili’s and that “lady Mends” gave him the money. The defendant declined to make a formal written or taped statement to police at that time.
 

 Detective Treigle also testified as to the initial stop of the defendant on June 21, 2008. Detective Treigle did not know why defendant was stopped on that date and was unsure whether the defendant had been issued a citation on that date. Detective Treigle explained that Officer Tilford, the patrol officer who stopped the defendant, had completed a field interview card. He had no information regarding how Officer Tilford ascertained that the defendant was in possession of $16,000.00. Detective Treigle also had no information as to whether the defendant consented to the June 21, 2008 search.
 

 Neither the defendant nor Officer Til-ford testified at the hearing on the motion to suppress.
 

 | .MOTION TO SUPPRESS
 

 In this case, the defendant maintains that state failed to establish that the June 21, 2008 stop and search of his motorcycle was lawful and that Agent Walthall therefore did not have reasonable suspicion to enter his residence. Thus, the argument follows, Agent Walthall’s entry was unlawful, and the evidence seized by Agent Walthall and Detective Treigle was suppressible.
 

 The Fourth Amendment to the United States Constitution protects “[t]he right of the people to be secure in then-persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. Similarly, the Louisiana Constitution provides that “[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const, art. 1, § 5. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment’s warrant exceptions.
 
 See, e.g., State v. Freeman,
 
 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634. The state has the burden of showing that one of the exceptions applies.
 
 Id.
 

 Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.
 
 State v. Nicholas,
 
 06-903 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. The Louisiana Supreme Court has held that, absent unusual circumstances, a parent possesses at least common authority over the residence occupied by the parent and his child.
 
 State v. Packard,
 
 389 So.2d 56, 58 (La.1980) (“[s]ince no unusual circumstances are presented, the mother could exercise |8her common authority over the defendant’s bedroom.”).
 
 See also State v. Wagster,
 
 361 So.2d 849, 855 (La.1978).
 

 An individual on parole or probation does not have the same freedom from governmental intrusion into his affairs as does the average citizen.
 
 State v. Saulsby,
 
 04-880 (La.App. 5 Cir. 12/28/04), 892 So.2d 655, 657. A probationer must necessarily have a reduced expectation of privacy, which allows for reasonable warrantless searches of his person and residence by his probation officer, even though less than probable cause may be shown.
 
 Id.
 
 at 657-58 (citing
 
 State v. Hamilton,
 
 02-1344 (La. App. 1 Cir. 2/14/03), 845 So.2d 383, 387,
 
 writ denied,
 
 03-1095 (La.4/30/04), 872 So.2d 480). This reduced expectation of privacy derives from the probationer’s con
 
 *320
 
 viction and his agreement to allow a probation officer to investigate his activities in order to confirm that he is abiding by the provisions of his probation.
 
 Id.
 
 at 658 (citing
 
 State v. Marino,
 
 00-1131 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52,
 
 writs denied,
 
 01-2287 (La.8/30/02), 823 So.2d 936, 02-1036 (La.3/21/03), 840 So.2d 532).
 

 Probable cause to search is not required to search a probationer or a parolee, rather, only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search.
 
 Id.
 
 The parole or probation officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances.
 
 Saulsby,
 
 892 So.2d at 658. A probation officer, however, may not use his authority as a subterfuge to help another police agency that desires to conduct a search, but lacks probable cause.
 
 Id.
 
 at 657 (citing
 
 State v. Malone,
 
 403 So.2d 1234, 1238 (La.1981)). In determining whether a warrantless search by a probation or parole officer was reasonable, the court must consider: (1) the scope of the particular intrusion, (2) the [ ¡¡manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.
 
 Id.
 
 (citation omitted).
 

 Although the State still bears the burden of proving the admissibility of evidence seized without a warrant, when the search is conducted for probation violations, the State’s burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring.
 
 Id.
 
 at 658.
 

 In this case, we find that although the state did not prove that Agent Walthall had sufficient reasonable suspicion to search the defendant’s residence, the search of the defendant’s bedroom was valid under the consent exception to the warrant requirement. This Court experienced a similar situation with respect to reasonable suspicion in
 
 Saulsby, supra.
 
 In
 
 Saulsby,
 
 the defendant’s probation officer received information that the defendant, who was then on probation, was involved in illegal narcotics activity.
 
 Id.
 
 at 657. In response, the defendant’s probation officer set up surveillance on the defendant’s residence with a deputy from the Jefferson Parish Sheriffs Office and a probation supervisor.
 
 Id.
 
 When the defendant arrived at his residence, the three men immediately detained him and began questioning him. When the defendant’s probation officer and the other officers searched defendant’s person, they found approximately $1,000 in cash in the defendant’s pocket.
 
 Id.
 
 At the hearing on the motion to suppress, the defendant’s probation officer testified that he believed defendant was unemployed at the time of his arrest. The defendant’s probation officer, however, did not testify at the suppression hearing as to who actually provided the initial information about defendant or whether the agent was informed of any specifics regarding defendants alleged drug activity. When asked on cross-examination whether defendant consented to the search, defendant’s probation officer responded, “I didn’t ask him.”
 
 Id.
 

 The trial court denied the defendant’s motion to suppress. However, we reversed and remanded, finding “that the searches of defendant’s person and his residence were unreasonable and in violation of the Fourth Amendment.”
 
 Id.
 
 at 659. In this case, the details regarding how the defendant initially came to the attention of police are not contained in the record. The state contends that the fact that the defendant was located with a large amount of currency constituted “reasonable suspicion” and that the search of his residence was therefore reasonable. We rejected a
 
 *321
 
 similar argument in
 
 Saulsby,
 
 and we reject the same argument here.
 

 However, in this case, unlike in
 
 Saulsby,
 
 the defendant’s mother gave a probation officer consent to search the defendant’s residence. The defendant’s mother had common authority over the defendant’s bedroom and escorted Agent Walthall there. Agent Walthall thereafter saw a digital scale within the black duffel bag in the defendant’s room. At that point, Agent Walthall acquired reasonable suspicion of narcotics activity. It was then that Agent Walthall searched the defendant’s room and discovered contraband belonging to the defendant.
 

 In light of the foregoing, the defendant’s contention that the trial court erred in failing to grant the motion to suppress lacks merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5th Cir.1990). Our review of the record reveals one error patent.
 

 The trial court failed to impose a mandatory fine on Count 1 and Count 2 in this matter. La.R.S. 14:95.1(B) provides in pertinent part that a person convicted of possession of a firearm by a convicted felon, “shall be imprisoned at hard labor Infer not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.” Therefore, the defendant was exposed to a sentencing range of ten to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence,
 
 and
 
 a fine of between one thousand and five thousand dollars.
 

 This Court has the authority to correct an illegally lenient sentence. La. C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. In
 
 State v. Campbell,
 
 08-1226, (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081,
 
 writ denied,
 
 09-1385 (La.2/12/10), 27 So.3d 842, this Court noted that “often in indigent defender matters, we have decided not to use that authority” to impose a mandatory fine. In the present case, we note that the defendant is indigent because he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to the defendant’s indigent status, we decline to exercise our discretion to remand this matter for imposition of the mandatory fine.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)