TERRI F. LOVE, Judge.
| )This appeal arises from defendant Donald Jones’ conviction of attempted possession of a firearm by a felon. The defendant was sentenced to seven years at hard labor, without benefit of probation, parole, or suspension of sentence. In his appeal, the defendant alleges the trial court abused its discretion in denying the motion to suppress evidence because the officers had no authority to conduct a warrantless search of his residence in the absence of a reasonable suspicion of criminal activity. We find that the trial court did not abuse its discretion in denying his motion to suppress as the officers would have inevitably discovered the firearm under the defendant’s bed. Furthermore, the probation officers had reasonable cause to arrest the defendant without a warrant for violating a condition of his probation — living under the roof of another probationer — and incident to that arrest the probation officers would have been authorized to search the defendant and his immediate surroundings. Therefore, we affirm.

PROCEDURAL HISTORY

Donald Jones (“the defendant”) was charged by bill of information with felon in possession of a firearm in violation of La. R.S. 14:95.1. The bill of information alleged that the defendant was previously convicted of attempted ^simple burglary. Jones subsequently filed several pre-trial motions, including a motion to suppress and a motion for preliminary hearing. At the preliminary hearing the trial court found probable cause to substantiate the charges. After a hearing on defendant’s motion to suppress, the trial court denied the motion to suppress. The defendant filed an application for supervisory writ, and this court declined to exercise its supervisory jurisdiction and informed the relator of his right to re-urge the matter again on appeal in the event of his conviction.
Thereafter, the defendant filed writs with the Louisiana Supreme Court to review this court’s decision. The Louisiana Supreme Court denied the defendant’s writ application.
The matter subsequently proceeded to trial. At trial, the defendant entered into a plea agreement with the State. In exchange for the State’s recommendation of a seven year sentence, the defendant pled guilty to the lesser included offense of attempted possession of a firearm by a felon. The defendant also reserved his right to appeal the trial court’s denial of his motion to suppress the evidence pursuant to State v. Crosby, 388 So.2d 584 (La.1976).
The trial court sentenced the defendant to seven years at hard labor, without the benefit of probation, parole, or suspension of sentence, to run concurrently with any other sentence, with credit for time served. The defendant moved for appeal, and contends the trial court erred in denying his motion to suppress evidence.

STATEMENT OF FACTS

In the present case, Officer J.D. Bertrand (“Officer Bertrand”) of Probation and Parole testified at the preliminary hearing. At the motion to suppress, Detective Korey Keaton (“Detective Keaton”) of the Orleans Parish ^Police Department and Ms. Kathy Guy (“Ms. Guy”), the defendant’s guardian, testified.
Officer J.D. Bertrand’s Testimony
At the preliminary hearing, the only witness called was Officer Bertrand of Probation and Parole. Officer Bertrand testified that he and several other officers were doing a routine residence check on the defendant in the 3000 block of Edith Weston Place. He stated that the probation *13 officers are permitted to conduct residence checks under La.C.Cr.P. Art. 895(A)(13).[1] Officer Bertrand testified that when he and the other officers arrived at the defendant’s residence, they knocked on the door and were greeted by who he thought was the defendant’s mother, Kathy Guy (“Ms. Guy”). The record reveals that Kathy Guy is the mother of another probationer Rondell Guy and the custodian of the defendant, not the defendant’s mother. Officer Bertrand stated that Ms. Guy gave them access to the residence and when asked about the defendant and Rondell Guy, she directed them upstairs towards their bedrooms. Officer Bertrand and another probation agent, Officer Spangler, proceeded upstairs. The other officers remained downstairs with Ms. Guy.
14When Officer Bertrand entered the defendant’s bedroom, he observed the defendant and a juvenile asleep on the bed. He also stated that the defendant was sleeping on the left side of the bed. Officer Bertrand informed the defendant the officers were there to conduct a residence check and asked him and the juvenile to step out of the room for officer safety. After exiting the room, the defendant was handcuffed by Officer Spangler and sent downstairs. Officer Bertrand subsequently conducted a search of the bedroom and found a loaded 9 mm handgun under the left side of the mattress, near the foot of the bed. After securing the firearm, Officer Bertrand found a box of .38 revolver ammunition under the left side of the bed. Officer Bertrand also stated that he observed a grinder, typically used for marijuana, a small scale, and the defendant’s birth certificate on the bedroom dresser.
On cross-examination, Officer Bertrand admitted that prior to visiting the defendant’s residence, he had no information that the defendant was in possession of a gun or information that he was involved in criminal activity. He stated the reason for going to the defendant’s residence was to conduct a routine probation check. Officer Bertrand testified that when he went upstairs, Supervisor Puhlman spoke with Ms. Guy and stayed with the family as he and *14 Officer Spangler searched the bedroom. He stated that he did not know if Ms. Guy signed a consent form. Officer Bertrand testified that six people were living at the residence, but he did not ask to whom the gun belonged. He testified that when the officers recovered the handgun, he turned it over to Detective Keaton to log into evidence.
Detective Korey Keaton’s Testimony
IsAt the hearing on the motion to suppress the evidence, Detective Keaton of the Orleans Parish Police Department, Special Operation Division testified. He testified on the date of defendant’s arrest, he was assisting the probation officers conduct the residence check. Detective Keaton testified that one of the reasons for the officers visiting the residence was because the defendant had violated his probation by living at the same address as Rondell Guy, another probationer. He testified that when he and six other probation agents arrived at the defendant’s house, Supervisor Larry Puhlman, knocked on the door and “announced his presence and authority.” Shortly thereafter, Officer Keaton stated that Ms. Guy and two other females opened the door. He testified that two probation officers went upstairs to defendant’s bedroom after Ms. Guy informed them that the defendant was upstairs. He also testified that Supervisor Puhlman found a box of ammunition for a .44 caliber gun in the living room on the first floor.
On cross-examination, Officer Keaton testified that he did not receive any information that there was criminal activity occurring at the Edith Weston residence. He stated that the only information he had was that two probationers, who were just placed on probation two weeks prior, were living at the same residence. Officer Keaton again testified that after Supervisory Puhlman announced his presence, Ms. Guy let the officers in the home. He stated he did not speak with Ms. Guy personally and was not aware if any of the agents spoke to Ms. Guy. Officer Keaton testified that Ms. Guy did not sign a consent form.
Ms. Kathy Guy’s Testimony
Ms. Guy also testified at the motion to suppress. Ms. Guy resides at the residence where the defendant was searched and is the defendant’s guardian. Ms. Guy testified that when she opened the door for the detective and the probation officers, they asked her where the defendant and her son, Rondell Guy, were. She also stated that she heard one law enforcement officer state “we gained entry” after putting his foot through the door. Ms. Guy testified that her son’s probation | ^officer, Officer Summer, and another officer asked again where Rondell Guy and the defendant were, and she said they were asleep. She stated that the officers then announced they were probation and parole officers and pushed their way in the house. Ms. Guy stated neither the probation agents nor the police officer asked for her permission to enter the home. Ms. Guy testified that when she asked them if they had a warrant, the officers informed her that they did not need one because as probationers, Rondell Guy and the defendant signed a form allowing probation officers to enter the home. When asked on direct examination if she felt like she could refuse to let the officers in, Ms. Guy stated “[n]o. I didn’t feel like I could — I thought I could have refused them, but when they had done busted and entered ... they said when my son and them signed some papers, that that [sic] the reason why they came.”
On cross-examination, Ms. Guy stated that she was not aware that Rondell Guy and the defendant were not allowed to be living together because they were on probation. Ms. Guy testified that she did not *15 direct the probation officers upstairs, but that after she said they were sleeping and that the officers “must have automatically assumed that they [were] upstairs.”

ERRORS PATENT

A review of the record reveals no errors patent.

STANDARD OF REVIEW

The trial court is vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be 17disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218; U.S. v. Seals, 987 F.2d 1102 (5 Cir.1993). Accordingly, “on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. ” Pham, 01-2199, p. 4, 839 So.2d at 218. Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. Id.

MOTION TO SUPPRESS

The defendant asserts that the trial court erred in denying his motion to suppress the evidence. He contends that the officers had no authority to conduct a war-rantless search of his residence in the absence of a reasonable suspicion of criminal activity.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. U.S. Const. Amend. IV; La.Const. Art. 1, § 5; State v. Francis, 10-1149, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708 writ denied, 11-0571 (La.10/7/11), 71 So.3d 311. Thus, when evidence is seized without a warrant as required by the federal and state constitutions, the burden is on the state to show that a search is justified by some exception to the warrant requirement. La.C.Cr.P. art. 703(D); State v. Anderson, 06-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546
On the other hand, probationers and parolees have a reduced expectation of privacy which allows reasonable warrant-less searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown. State v. Malone, 403 So.2d 1234, 1238 (La.1981).
This reduced expectation of privacy is based on a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation. State v. Thomas, 96-2006, p. 2 (La.App. 4 Cir. 11/06/96), 683 So.2d 885, 886. A probationer is not, however, subject to the unrestrained power of the authorities. Id. A search of the probationer may not be a subterfuge for a police investigation. Id. A warrantless search of a probationer’s property may be permissible when:
[I]t is conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the reasonableness of a warrant-less search, [an appellate court] must consider (1) the scope of the particular intrusion, (2) the manner in which it was *16 conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.
Id. at pp. 2-3, 683 So.2d at 886 (citing, Malone, 403 So.2d at 1239). Although the state still bears the burden of proof because the search was conducted without a warrant, when the search is conducted for probation violations, the state’s burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. Id.; See also, State v. Marino, 00-1131, p. 5 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52.
19This reasonable suspicion standard for a warrantless search of a probationer is consistent with La. C.C.P. art. 895(A)(13)(a), which provides as a condition of probation that defendant agree to searches by the probation officer assigned to him, without a search warrant, when the officer has reason to believe that the person is involved in criminal activity. The statute provides, in relevant part.
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
[[Image here]]
(13)(a) Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.
La.C.Cr.P. art. 895(A)(4) provides as a condition of probation that the defendant “[plermit the probation officer to visit him at his home or elsewhere.”
The defendant in this ease contends that the intrusion into his home was unreasonable in light of the totality of the circumstances under the Malone factors. He argues that six probation agents and one detective entered his home, without consent, to conduct a “routine residence” check. The defendant further alleges that although the officers had information that he violated his probation, the search was unjustified as the officers had no reason to believe he was engaged in criminal activity-
The state, however, argues that the search was reasonable and authorized by law. The state claims that because the officers learned the defendant was in Imviolation of his probation, under La. C.Cr.P. Art. 895(A)(4), they had authority to visit him at home. The state also argues that under “the terms and conditions of his probation agreement,” the defendant was required to permit his probation officer access and thus, in effect consented to the officers’ entry into his residence. Despite this contention, the state never offered or introduced the defendant’s probation agreement into the record. Additionally, the state maintains that Ms. Guy consented to the officer’s search by opening the door and directing the officers toward the defendant’s bedroom.
The state is correct in pointing out that La.C.Cr.P. Art. 895(A)(4) provides as a condition of probation that the defendant “[p]ermit the probation officer to visit him at his home or elsewhere.” Therefore, the officers were within the scope of their duty to visit the defendant’s residence. Also, the jurisprudence is clear that a probationer has a reduced expecta *17 tion of privacy which allows a probation officer to conduct unannounced visits to verify that the probationer is in compliance with the provisions of his probation. See, Thomas, supra, 96-2006, p. 2, 683 So.2d 885, 886; Malone, supra, 403 So.2d at 1239; State v. Marino, 00-1131, p. 4 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52; State v. Wesley, 28,941, p. 8 (La.App. 2d Cir. 12/13/96), 685 So.2d 1169, 1174, State v. Robertson, 06-167, p. 13 (La.App. 3 Cir. 7/16/08), 988 So.2d 294, 303; State v. Marks, 09-260, p. 13 (La.App. 5 Cir. 10/27/09), 28 So.3d 342, 350-51.
Even though a probationer has a reduced expectation of privacy, there is no statutory support for the contention that a probation officer may conduct a warrant-less search of a probationer’s residence without reasonable suspicion of criminal activity. See La.C.Cr.P. Art. 895(A)(13)(a). Instead, a probation officer must have “suspicion to believe that the person who is on probation is engaged in |nor has been engaged in criminal activity” to search a probationer without a warrant. Id. See also Marino, supra, 00-113 at p. 6, 804 So.2d at 53 (a warrantless search of a parolee’s home was justified where the parolee officer had information that the parolee previously convicted of a drug offense was involved in drug use and when the parole agent smelled marijuana and subsequently observed marijuana in plain view on the coffee table); Malone, 403 So.2d at 1240 (finding held that the war-rantless search was reasonable where the probation officer was aware that marijuana was being grown in the general vicinity of probationer’s home and upon visiting the probationer’s home observed a garden hose running from the probationer’s house to the nearby woods).
Entry into the Defendant’s Residence
The question before this court becomes whether the officers had authority to enter the defendant’s home and into his bedroom to confirm or refute the alleged probation violation — that the defendant was living with another probationer.
In United States v. LeBlanc, 490 F.3d 361 (5th Cir.2007), the Fifth Circuit addressed a similar issue. In LeBlanc, the probation agent visited the home of a probationer who was previously convicted of a felony. In doing so, the probation agent conducted a “walk-through” inspection of the probationer’s residence to verify his current residence, observed a shotgun in plain view sticking out of the probationer’s bed, and then seized the firearm as evidence of a probation violation. Id. at pp. 363-64. The probationer filed a motion to suppress. The trial court denied, holding that the actions of the probation agent did not constitute a search separate from the home visit and that this visit was permissible under the Fourth Amendment given the reduced privacy expectations of probation. Id. at p. 364.
11¾(⅛1 appeal, the probationer did not dispute the probation agent’s authority to conduct a home visit, but argued that the agent exceeded the bounds of his authority by inspecting the probationer’s whole house. Id. at p. 367. The probationer also argued that in order for the agent to look around his house, the agent must have reasonable suspicion that the probationer was engaged in criminal activity. The Fifth Circuit disagreed and affirmed the trial court. The LeBlanc court found that the walk-through inspection of the probationer’s residence to verify his current residence was not a “search” for purposes of the Fourth Amendment, even though the probation agent lacked reasonable suspicion that the probationer was involved in criminal activity. Id. at p. 370
The LeBlanc court expounded on a probation officer’s authority to enter a probationer’s residence,
*18 “... [T]he Louisiana Probation and Parole Officer’s Manual authorizes a probation officer to perform a ‘residence verification’ to determine that an offender resides at a claimed residence ... ‘interpersonal contact’ is defined as [f]aee to face contact with the offender which can occur in the field or in the office ...
A probationer is subject to state supervision as part of the “special needs” doctrine, including verification of where he lives, and cannot expect to be free from “interpersonal contact” at his residence. Were we to impose a requirement that a probation officer show reasonable suspicion of criminal activity before visiting a probationer at his home, supervision would become effectively impossible ...
The Louisiana Supreme Court has noted that in supervising a probationer, a probation officer may have to take actions to accomplish a home visit that would intrude upon the liberty of an ordinary person, but not a probationer.” Id. at 367-70.
Although LeBlanc is not binding on this court, the LeBlanc opinion is persuasive and helpful in determining the scope of visiting a probationer at his residence under La.C.Cr.P. Art. 895(A)(4). According to LeBlanc and La.C.Cr.P. Art. 895(A)(4), probation officers are authorized to conduct a walk through | ^inspection of a probationer’s home to verify his residence. Thus, in the present case, despite there being a dispute as to whether Ms. Guy gave consent to the officers entering the defendant’s residence, the officers were within their authority to enter the residence and then the bedroom to confirm that the defendant actually resided there and to investigate whether he was in fact living with another probationer. As such, the officers’ entry in the defendant’s home and bedroom is justified.
Search of Defendant’s Bedroom
The search of the defendant’s bedroom, however, requires further analysis. In order to search the defendant’s personal effects, the officers had to have reasonable suspicion of criminal activity. See La.C.Cr.P. Art. 895(A)(13)(a). The record indicates that after the officers entered the bedroom and asked the occupants to vacate, they discovered a handgun under the defendant’s mattress and a box of ammunition under the bed. Officer Bertrand testified that after discovering the handgun, he observed a marijuana grinder and scale on the defendant’s bedroom dresser.
It was not until after the officers searched the defendant’s belongings that Officer Bertrand stated that he discovered the paraphernalia. Had the officers initially observed the grinder and the scale on the defendant’s dresser upon entering the bedroom, the evidence would have fallen under the plain view exception and given the officer’s reasonable suspicion to believe the defendant was engaged in criminal activity to conduct a search. See State v. Norals, 10-0293, p. 5 (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 910 (under the plain view doctrine if officers are lawfully in a position from which they view an object that has an | ^incriminating nature which is immediately apparent they may seize it without a warrant).
Neither testimony from the officers nor evidence introduced at the hearing indicated that there was reason to believe the defendant was involved in criminal activity prior to the search. The only reasons articulated for visiting the defendant’s residence and conducting the search was for a routine residence check and because the defendant was living with another probationer. These are insufficient grounds for *19 a search of the defendant’s personal effects under La.C.Cr.P. Art. 895(A)(13)(a).
Further, the state did not provide documentation at the hearing that the defendant agreed to a search of his residence without the requisite reasonable suspicion as a condition of his probation. As such, the state had failed to prove the warrant-less search of the defendant’s room was reasonable under the circumstances.
Consent to Search
The state also argues that Ms. Guy consented to the search. Although the trial court is entitled to great weight in determining whether there was consent to a search, the trial court did not make such a determination at the hearing. See State v. Mayberry, 00-1037, p. 9 (La.App. 4 Cir. 5/9/01), 791 So.2d 725, 733. In denying the motion to suppress, the trial court found that the probation officers had the right to search the defendant’s home as a probationer and did not reach the issue of whether Ms. Guy consented to the search or make findings of fact as to her consent. Therefore, this court is not bound to any findings of fact of the trial court as it relates to Ms. Guy’s consent to search the defendant’s bedroom.
11sThe state argues that pursuant to State v. Cosie, 09-933 (La.App. 5 Cir. 6/29/10), 44 So.3d 314, Ms. Guy consented to the search by directing the probation officers towards the defendant’s bedroom. In Cosie, the parolee was previously convicted of possession with intent to distribute cocaine. The parolee’s parole officer was notified by the Kenner Police Department that the parolee had been spotted leaving a high crime area with $16,000.00 hidden in his motorcycle and appeared to be very nervous during a traffic stop conducted by the Kenner police. As a result the parole officer and several narcotics detectives went to the parolee’s residence and knocked on the door. When the parolee’s mother answered the door she informed the officers that the parolee was not home. The parole officer then asked if she and a detective could verify if the parolee was not home. The mother agreed and took the parole officer to the parolee’s bedroom. When the parole officer entered the room, she observed an open duffel bag with a digital scale on top of the bag in plain view. The parole officer then examined the bag’s contents and found several plastic bags, a razor, and white residue on the scale. The Fifth Circuit found that although parole officer did not have reasonable suspicion[2] to search the parolee’s residence, the search of the parolee’s bedroom was valid because the parolee’s mother consented to the search of his bedroom. Id. at pp. 9-10, 44 So.3d at 320-21.
In this case, similar to the mother in Cosie, Ms. Guy as the guardian of the defendant would have the ability to consent to the search of his room. However, unlike Cosie, Ms. Guy did not escort the probation officers to the defendant’s bedroom, and there is conflicting testimony concerning Ms. Guy’s consent. 11fiOfficer Bertrand and Detective Keaton testified that Ms. Guy allowed them to enter and directed them upstairs towards the defendant’s bedroom. Detective Keaton also stated that prior to going upstairs the supervising Officer Puhlman explained that they were from probation and parole and why they were there. Conversely, Ms. Guy testified that the officers did not ask her permission to enter and pushed their way inside the home. She explained:
When I asked them what they’re doing ... why they here (sic), and do they *20 have a warrant, a search warrant, they said they don’t need that. But by that time, two of them had done (sic) already exited (sic) upstairs to the house, and the one [officer] that was downstairs that was ... blocking the door was answering me, saying they don’t need that [a warrant] because some kind of — when they [probationers] come sign the paper for (sic) to get on probation, they [officers] automatic (sic) could enter your house.
Ms. Guy’s testimony also indicated that she did not feel as if she could refuse the officers from entering her home. Specifically, Ms. Guy stated, “I thought I could have refused them, but they went had done [sic] busted and entered and I was questioning them about the search warrant, or do they have proper cause, or whatever, they said that when my son [Rondell Guy] and them sign some papers, that’s the reason why they came.”
Additionally, the record indicates that subsequent to the officers’ entry, all the residents of the home were ushered into one room, and that prior to searching the bedroom the defendant was cuffed and taken downstairs. However, because this court is not able to observe the witnesses and assess credibility, it cannot make a factual determination of the voluntariness of Ms. Guy’s consent to search the defendant’s bedroom.[3]
117Reasonable Suspicion that a Person Possesses a Dangerous Weapon
The state also argues the search of the defendant’s mattress was authorized under La.C.Cr.P. art. 215.1(B), which allows an officer to search a person if the officer reasonable suspects that the person possesses a dangerous weapon.[4] The state relies on the incident report, wherein Detective Keaton stated that the search of the mattress was conducted for officer safety. Officer Bertrand did testify at the preliminary hearing that probation officers routinely move all the occupants of a home into one room for officer safety, but did not mention that was the reason for the search of the defendant’s mattress.[5] Thus, because the state failed to introduce this evidence at the hearing and was not contained in the record, it cannot be considered by this court on appeal.
Inevitable Discovery Doctrine
Finally, the state argues that even if the search was unlawful, the evi *21 dence seized is admissible under the inevitable discovery doctrine. The inevitable discovery doctrine provides that evidence found as a result of a violation of a defendant’s constitutional rights is admissible if it can be shown by a preponderance of the evidence that the evidence ultimately or inevitably would have been lawfully discovered. State v. Martello, 98-2066, p. 13 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1201; State v. Jones, 98-0963, p. 4 (La.App. 4 Cir. 6/24/98), 720 So.2d 1, 5. La.C.Cr.P. Art. 899(B) states in pertinent part,
“[i]f a probation officer has reasonable cause to believe that a defendant has violated or is about to violate a condition of his probation ... the probation officer may arrest the defendant without a warrant.”
Here, the state argues that the probation officers had reasonable cause to believe that the defendant violated his probation in that he was living with another probationer, and thus, they were authorized to arrest the defendant. Further, the state contends because incidental to the defendant’s arrest, the officers would have been able to search the defendant and the immediate area, including the bed mattress, the officers would have inevitably found the handgun and ammunition.
A search incident to a lawful arrest is an exception justifying a warrant-less search. During a search incident to a lawful arrest, the officer may search the suspect’s person and the area within his immediate control in order to remove weapons and prevent destruction of evidence. State v. Jerome, 07-1243, p. 3 (La.App. 4 Cir. 4/16/08), 983 So.2d 214, 216. In State v. Williams, 398 So.2d 1112 (La.1981), the Louisiana Supreme Court stated:
When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it is reasonable for the arresting officer to conduct a prompt, warrantless “search of the arrestee’s person, and the area ‘within his immediate control’ construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.” United States v. Chadwick, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550 (1977); Chimel v. California, [supra] [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ]; State v. Clift, 339 So.2d 755 (La.1976).
liflA search incident to a lawful arrest not only may be conducted without a warrant, but it may also be made whether or not there is probable cause to believe that the person arrested has a weapon or is about to destroy evidence. State v. Warren, 05-2248, p. 14 (La.2/22/07), 949 So.2d 1215, 1227. “The potential dangers lurking in all custodial arrests make war-rantless searches of items within the ‘immediate control’ area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved.” Id. (quoting, United States v. Chadwick, supra, 97 S.Ct. at 2485 (dicta); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).
In Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) the United States Supreme Court held that the search incident to arrest exception did not apply to the search of the defendant’s vehicle following his arrest for driving with a suspended license. The defendant and two other suspects were handcuffed and secured in separate patrol cars before the officers searched defendant’s car. The Court reasoned that the police could not *22 reasonably have believed that the defendant could have accessed the car at the time of the search or that evidence of the offense for which he was arrested might have been found therein.
In the present case, the chances of the defendant accessing the firearm under the mattress were remote and in light of Gant, impermissible.[6] At the time of the war-rantless search, the defendant was handcuffed and downstairs. Additionally, all others present in the house were removed from the bedroom and the area surrounding the bedroom.
| gpHowever, the drug paraphernalia the officers subsequently observed in plain view on the defendant’s dresser would have given them reasonable suspicion of criminal activity, authorizing the search of the defendant’s room. See Warren, 05-2248, p. 18, 949 So.2d at 1229 (noting that guns and drugs frequently go hand-in-hand); State v. Jones, 99-0861, p. 14 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38-39 (stating that suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La.C.Cr.P. art. 215.1(B)). Thus, the probation officers would have inevitably discovered the evidence seized in the present case.

DECREE

Based on the foregoing, we find the probation officers had reasonable cause to arrest the defendant without a warrant for violating a condition of his probation and incident to that arrest would have authorized the officers to search the defendant and his immediate surroundings. Thus, the evidence seized from the search incident to the arrest would have been inevitably discovered and is admissible evidence. Accordingly, we find the trial court did not abuse its discretion in denying the defendant’s motion to suppress; and therefore, we affirm.

AFFIRMED

. Officer Bertrand explained that La.C.Cr.P. art. 895(A), "specifically condition 13, which, when they [probationers] sign that, they agree to searches of their person, their property, and place of residence, their personal effects, their vehicle, any or all of them at any time by the probation and parole officer.” (R. 266-267). However, this is not an accurate representation of the law. La. C.C.P. art. 895(A) provides, in relevant part.
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
[[Image here]]
(4) Permit the probation officer to visit him at his home or elsewhere;
[[Image here]]
(13)(a) Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.

. The Cosie court rejected the state's argument that the fact that the parolee had a large amount of currency constituted reasonable suspicion to search the residence. Id. at p. 10, 44 So.3d at 320

. See, State v. Toney, 99-1574, pp. 7-8 (La.App. 4 Cir. 11/8/00), 796 So.2d 1, 7-8 (finding that while the probationer's aunt, the owner of the residence, gave them permission to enter and search the house for a probation violator, there was nothing in the record that suggested that the aunt granted the officers permission to search for anything else, and thus held that the state failed to prove that the officer's had consent to search the bedroom).

. La.C.Cr.P. art. 215.1 provides, in relevant part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.

. The state filed a motion to supplement the record with the incident report that was not included with the trial record. However, because this evidence was not introduced at the trial court level, it cannot be considered as part of this appeal. See State v. Clark, 02-1463, p. 14 (La.6/27/03), 851 So.2d 1055, 1069 (citing State v. Langley, 95-1489, p. 14 (La.4/3/02), 813 So.2d 356, 366).

. Arizona v. Gant involved an automobile whereas the present case involves the war-rantless search of a home which is always, in the law, entitled to great protection from war-rantless searches.