

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00669-CR

Donald W. **COX** Sr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CR-12-036
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: May 21, 2014

AFFIRMED

Pursuant to a plea bargain, Donald Cox Sr. pled guilty to possession of methamphetamine (in an amount of more than one gram but less than four grams) with the intent to deliver and was sentenced to a ten-year term of imprisonment in the Texas Department of Criminal Justice—Institutional Division. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (West 2010). On appeal, he contends the trial court erred by denying his pretrial motion to suppress. Because we hold the trial court did not abuse its discretion in denying Cox's motion, we affirm the trial court's judgment.

## BACKGROUND

In January 2012, Cox was on probation in the 216th Judicial District Court of Bandera County, Texas, for drug offenses. One of the terms of Cox's probation provided that he would consent to searches of his residence by probation officers. On January 17, probation officers Nick Madrid and Jody Lange arrived at Cox's residence for a home visit. Cox was at home, and the officers conducted a search of his residence during which they found methamphetamine. After his indictment for possession with the intent to deliver, Cox moved to suppress the evidence arising from the search, alleging that it was obtained in violation of the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution.

At the pretrial suppression hearing, Cox focused on challenging "the initial entry and search into the home." The State conceded the search was conducted without a warrant, but it contended the search was lawful because Cox consented to the search. Madrid, Lange, and Cox all testified as witnesses at the hearing. All three agreed that Cox, in response to a request by the officers, consented to let them enter and "look around" his residence. There was evidence at the hearing that the officers picked up and examined items in Cox's residence prior to their discovery of illegal drugs.

The trial court made written findings of fact and conclusions of law. As relevant to Cox's appeal, the trial court found:

> 10. On or about January 17, 2012, Nick Madrid and Jody Lange contacted [Cox] at his residence and requested to enter the residence to look around for the purpose of monitoring the Defendant's compliance with the terms and conditions of his community supervision. . .
>
> 12. On or about January 17, 2012, [Cox] freely and voluntarily gave consent for Nick Madrid and Jody Lange to enter his residence and to look around the residence.

13. On or about January 17, 2012, [Cox] freely and voluntarily gave consent for Nick Madrid and Jody Lange to search his residence.

14. On or about January 17, 2012, [Cox] did not limit his consent to the search of his residence.

15. On or about January 17, 2012, [Cox] remained present when Jody Lange and Nick Madrid searched his residence.

16. On or about January 17, 2012, [Cox] did not object or attempt to withdraw his previously given consent when Jody Lange and/or Nick Madrid searched his residence.

Based on its findings, the trial court concluded that the State proved by clear and convincing evidence that Cox consented to Madrid and Lange's search of his residence, and the court therefore denied Cox's motion to suppress.

## DISCUSSION

On appeal, Cox contends that his consent for the probation officers to "look around" limited the type of search the probation officers could conduct to a visual inspection of his residence. Thus, he argues, the officers exceeded the scope of his consent by conducting a physical search of objects within his residence and the State failed to prove the illegal drugs were found pursuant to a consent search. He also argues the trial court's findings of fact and conclusions of law supporting its decision are erroneous.

### *Consensual Searches*

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). "The entry into a residence by police officers is a 'search' for purposes of the Fourth Amendment, but an owner's or occupant's voluntary consent makes that entry constitutionally 'reasonable.'" *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing

implied consent." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). "The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation." *Id.* at 459. "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced." *Id.*

"A person is free to limit the scope of the consent that he gives." *Valtierra*, 310 S.W.3d at 449. "It is therefore 'important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity.'" *Weaver*, 349 S.W.3d at 526 (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.1(c) at 19 (4th ed. 2004)). However, "a person's silence in the face of an officer's further actions may imply consent to that further action." *Valtierra*, 310 S.W.3d at 449. "'[T]he standard for measuring the scope of consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)); *see also United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996) ("Recitation of magic words is unnecessary; the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect.")

Under the United States Constitution, voluntary consent may be proven by a preponderance of the evidence. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The Texas Constitution requires the State to prove voluntary consent by clear and convincing evidence.[1] *Id.*

---

[1] Although Cox complained about the search on both federal and state grounds, Cox has not identified any substantive difference of law except for the burden of proof to justify a finding of voluntary consent.

*Standard of Review*

When we review a trial court's ruling on a motion to suppress, we accord the court's factual findings "almost total deference," provided its determinations are supported by the record. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We thus view the evidence in the light most favorable to the trial court's ruling and afford its ruling "'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *Id.* (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). "And when reviewing mixed questions of law and fact, courts afford great deference to the trial judge's rulings, provided that those rulings depend upon evaluations of credibility and demeanor." *Id.* "But when credibility and demeanor [are] irrelevant, courts conduct a de novo review." *Id.*

*Application*

Cox's argument that he did not consent to a physical search of items in his residence heavily relies on the fact that the officers never asked if they could perform a "search." Instead, they only asked whether they could "look around." Cox argues that consent to "look around" could not have reasonably been understood as consent for the officers to pick up and examine objects in Cox's residence.

Cox's primary authority is *United States v. LeBlanc*, 490 F.3d 361 (5th Cir. 2007). In *LeBlanc*, the Fifth Circuit considered whether a probation officer's home visit with a probationer amounted to a search under the Fourth Amendment. *Id.* at 369–70. When the officer arrived at the probationer's residence, he asked if he could come inside and "look around." *Id.* at 363. The probationer consented and walked around his residence with the officer and conversed with him. *Id.* at 363–64. While they walked around the residence, the officer saw a shotgun in plain view, which was a violation of the probationer's terms of probation. *Id.* at 364. On appeal, the probationer argued that "by asking if he could 'look around,' [the officer] conducted a form of search that was

not imposed as a condition of [the probationer's] probation." *Id.* at 369. The Fifth Circuit held that the officer had not conducted a search. *Id.*

*LeBlanc* is not on point. The issue at Cox's suppression hearing was not whether the probation officers conducted a search, but whether the type of search the officers conducted fell within the scope of Cox's voluntary consent. *LeBlanc*'s holding that a visual inspection of a probationer's residence did not rise to the level of a Fourth Amendment search does not support Cox's contention that his consent to "look around" did not include the physical examination of items in his residence.

The Dallas court of appeals has considered whether a person's consent to "look around" his residence limited the permissible scope of an officer's search to a visual inspection or instead permitted the officer to also conduct a physical search of objects within the residence. *Marshall v. State*, Nos. 05-98-01989-CR, 05-98-01990-CR, & 05-98-01991, 2000 WL 816037 (Tex. App.—Dallas June 26, 2000, no pet.) (not designated for publication). In *Marshall*, an investigating officer went to the residence of the defendant's nephew and asked to "look around," and the nephew consented. *Id.* at *1. While the officer looked around, he saw a trenchcoat on the floor. *Id.* The officer seized and searched the coat, discovering a gun and crack cocaine in its pockets. *Id.*

The defendant argued that his nephew's consent to the officer only authorized the officer to look around, not to seize and search anything. *Id.* at *4. The court rejected that argument

> Such a phrase, if given in the context of normal citizen interaction (such as a customer being given the proprietor's permission to look around an antique store), customarily carries with it permission to pick up and examine articles. "Look around" or "look over" are every day phrases that imply a willingness to allow examination, not just observation, of everything from live stock at an auction to accounting figures in business records. These phrases would be meaningless if taken literally in our society; preventing the examination of a horses teeth for instance or the inside of accounting books. Because of this commonality of usage of the phrase "look around" throughout daily cultural activity, we conclude [the officer]

> acted reasonably in believing [the nephew's] permission to look around included permission to pick up and examine articles found throughout the apartment.

*Id.* at *5. The Dallas court's reasoning is persuasive and fatal to Cox's contention that his consent for the officers to look around could not be reasonably understood as consent for the officers to conduct a physical search of objects in his residence, in addition to a visual inspection. We hold a reasonable officer could readily conclude that Cox's consent for the probation officers to "look around" encompassed his consent for them to pick up and examine objects in his residence.

Our conclusion is also supported by Cox's silence in the face of his probation officers' actions. A reasonable person could conclude that Cox's silence after the officers began physically searching objects in his residence implied the scope of his consent "to look around" included consent for the officers to pick up and examine objects in his residence. *See Valtierra*, 310 S.W.3d at 449. We reject Cox's argument that his silence is not probative to whether he voluntarily consented. *See id.* Therefore, based on Cox's statement to the probation officers that they could "look around" and his silence in the face of their subsequent actions, we hold a reasonable person could conclude that the State showed Cox voluntarily consented to the officer's examination of items in his residence by clear and convincing evidence.

In addition, Cox's argument essentially asks that we impose a requirement that an officer must ask for and a probationer must utter the magic words "I consent to a *search*" before an officer may examine items in a probation's residence. *See Stewart*, 93 F.3d at 192. Such a requirement is inconsistent with the totality-of-the-circumstances analysis. *See id.*

Most of Cox's challenges to the trial court's written findings of fact and conclusions of law are based on these same arguments and they are overruled for the same reasons.

Cox's one remaining challenge to the court's findings and conclusions is that the trial court erred by concluding the terms of Cox's community supervision that required Cox to consent to

searches by his probation officers were reasonable. He argues that the Court of Criminal Appeals rejected similar conditions as unconstitutional and unreasonable in *Tamez v. State*, 534 S.W.2d 686 (Tex. Crim. App. 1976).

The searching officer in *Tamez* conducted a search of the defendant's vehicle. *Id.* at 688. The State attempted to justify the search on the basis that the defendant consented to searches at any time under the terms of his probation for an earlier offense. *Id.* at 689–90. The Court rejected the State's reliance on the defendant's probation conditions because the conditions were overbroad and because the defendant's acceptance of those conditions could not have been the result of voluntary consent. *Id.* The opinion, however, does not discuss whether the defendant was asked for or gave express consent to search his vehicle.

Assuming *arguendo* that the terms of Cox's community supervision were overly broad and that he could properly challenge those terms at this suppression hearing (long after they were imposed), *Tamez* would still not support reversal. In this case, the State does not attempt to justify the search of Cox's residence as reasonable solely on the basis of Cox's terms of community supervision. Instead, the probation officers asked for Cox's consent to "look around," and Cox gave his consent. The State's search of Cox's residence is therefore based on his voluntary consent at the time of the search and not on the (potentially overbroad) terms of his community supervision.

## CONCLUSION

The trial court's conclusion that Cox voluntarily consented to the search of his residence and items within his residence is supported by the record, and we hold it was not an abuse of discretion for the court to deny Cox's motion to suppress. The trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice

Do Not Publish