Judge Terri F. Love
11 This case arises from the search of defendant’s residence in conjunction with a probation-related compliance check. Officers from three law enforcement agencies arrived at defendant’s home at 6:00 a.m. to conduct an alleged compliance check. Officers entered the residence and found defendant and defendant’s female companion sleeping. Both defendant and defendant’s female companion were immediately placed in handcuffs. None of the other five people were placed in handcuffs. After viewing a round of ammunition in plain viéw, the officers searched defendant’s én-tire residence, finding two stolen weapons. Defendant filed a motion'to suppress contending that the evidence was illegally seized. The trial court granted the motion to suppress, finding that the State used defendant’s status as a probationer as a subterfuge to circumvent the warrant requirement. After docketing the matter1 for oral argument and considering the brief filed, we find that the trial court correctly granted defendant’s motion to suppress, as *642 the law officers at his residence were not present to conduct a compliance check, none of the officers were assigned to the defendant, and the subsequent search and seizure was unconstitutional. The writ is denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Louisiana Department of Probation and Parole Agent James Bertrand and | {Agent Jason Hardy conducted a compliance check at Avery Julien’s home at 6:00 a.m. on March 8, 2016. Neither Agent Bertrand nor Agent Hardy was assigned to monitor Mr. Julien, a probationer. Agents Betrand and Hardy were accompanied by the New Orleans Police Department (“NOPD”) and officers from the U.S. Marshals’ Gulf Coast Criminal Fugitive Task Force.[1] After knocking on Mr. Julien’s door, Agent Bertrand allegedly observed an African-American male peer from the window located between the living room and kitchen area of the residence. When no one came to open the door, the officers continued to knock and announce their presence. Agent Bertrand observed the individual inside look out at them a second time and heard “a lot of movement ... going on inside of the house.” After someone “finally opened” the front door, the officers entered, secured the residence and were directed to Mr. Julien’s room, where Agents Bertrand and Hardy found Mr. Julien in bed with a female companion. There were seven people in the residence: defendant and a female in his bedroom; three persons in a second bedroom; and another two people in the living room. The agents handcuffed Mr. Julien and his female companion and escorted them from the room. The evidence does not reflect that the other occupants were handcuffed.
While' conducting a “protective sweep to make sure that there were no other individuals in the room,” Agent Bertrand saw a live nine-millimeter round of ammunition on the windowsill. Upon locating the ammunition, the agents deemed they possessed the requisite level of cause to conduct a search. Agent Hardy then discovered a firearm in the drawer of the nightstand next to where Mr. Julien was sleeping. The following search of the remainder of the residence yielded a second |Rflrearm and accompanying ammunition. Both weapons were checked through NCIC, which revealed they were reported stolen. Agents Bertrand and Hardy reported their discovery of the contraband to a U.S. Marshal on the scene, who then took over the investigation.
As a result, the State filed a bill of information charging Mr. Julien with possession of a firearm by a convicted felon and illegal possession of a stolen firearm. Mr. Julien pled not guilty. Mr. Julien filed Motions to Suppress and for a Preliminary Examination. Following a hearing, the trial court granted Mr. Julien’s Motions to Suppress and found no probable cause. The State noticed its intent to seek writs, and the trial court stayed the proceedings pending this Court’s decision. The State’s timely filed application for supervisory review followed.

STANDARD OF REVIEW

The Louisiana Supreme Court “restated the general rule that appellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a de novo standard of re *643 view.’’ State v. Wells, 08-2262, p. 4 (La. 7/6/10), 45 So.Bd 577, 580. “When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.” Id. “A ‘trial judge’s ruling [on a fact question], based on conclusions of credibility and weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling.’ ” Id., 08-2262, pp. 4-5, 45 So.3d at 580-81; quoting State v. Bourque, 622 So.2d 198, 222 (La. 1993).
14When reviewing the grant of a motion to suppress, appellate courts must remember that “a trial .court’s findings on a motion to suppress the evidence are entitled to great weight, considering the district court’s opportunity, to observe the witnesses and weigh the credibility of their testimony.” Wells, 08-2262, p. 5, 45 So.3d at 581. “A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.” Id.

MOTION TO SUPPRESS

The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. ■ Ordinarily, when evidence is seized without a warrant, the burden is on the State to demonstrate that a search is justified by some exception to the warrant requirement. See La. C.Cr.P. Art. 703(D); State v. Bell, 09-0574, p. 4 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 506.
Individuals on probation possess a diminished expectation of privacy. State v. Malone, 403 So.2d 1234, 1239 (La. 1981); see also State v. Marino, 00-1131, p. 4 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52. “This reduced expectation of privacy is based on a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation.” State v. Fields, 12-0674, p. 9 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 317. That reduced expectation of privacy authorizes “reasonable warrantless searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown.” State v. Jones, 12-0438, p. 8 (La.App. 4 Cir. 3/13/13), 119 So.3d 9, 15.
R“A probationer is not, however, subject to the unrestrained power of the authorities.” Fields, 12-0674, p. 9, 120 So.3d at 317. This Court has recognized that “a search of the probationer may.not be a subterfuge for . a police investigation.” Id. However, “a probation officer may conduct a warrantless search of a probationer’s property when .‘the. officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place.’” Id., quoting State v. Thomas, 96-2006, p. 2 (La.App. 4 Cir. 11/06/96), 683 So.2d 885, 886. “In order to determine reasonableness we must consider ‘(1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, arid (4) the place in which it was conducted.’ ” Id.
The trial court focused largely on the absence of participation by the agent assigned to Mr. Julien and the application of La. C.Cr.P. Art 895(A)(13)(a), which requires as a condition of probation that the defendant:
Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all *644 of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or .-with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.
The trial court stated, “[T]he problem is that the agent specifically testified that he was not assigned to the case. If he would have said that he had been assigned to it that morning, I would agree with [the state].” The .trial court continued, “I’m saying'that as I read the statute that they can not enter the house and conduct a war-rantless search, be it walk into the house in the first place, unless it is the agent that is assigned to the case
| «La. C.Cr.P. Art. 895 outlines the conditions of probation. Subsection (A)(4) provides that the probationer shall “[p]ermit the probation officer to visit him at his home or elsewhere,” La. C.Cr.P. Art. 895(A)(13)(a) was amended to prtivide that a probationer shall:'
Agree to searches of his' person, his property, his place of residence, his vehicle, or his personal effects, or any or all ■■of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable - suspicion to believe that the person-who is on .probation is engaged in or has been engaged in criminal activity. (Emphasis added).
The Legislature specifically included “by the probation officer or the parole officer assigned to him” in the amendments. This phrase introduced a new limitation on the search «capabilities .of probation officers. The Legislature also contemplated the unavailability of the probation officer assigned to the defendant, as reflected by La. C.Cr.P. Art. 899(B), which provides that a probation officer may authorize a peace officer to arrest a probationer if an ündue risk to the public or probationer exists.
The trial court also noted the absence of evidence introduced at the suppression hearing demonstrating the presence of any cause for the search. When, ruling, the trial court stated:
Their testimony was that they went to knock on the door and that someone who they could not identify looked out and seemed unwilling to open the door to law enforcement officers. Without being able to establish that the person [sic] looked out the window was, in fact, the person on probation and that the person on probation was then somehow involved' in criminal activity. I’m not sure if that in and of itself amounts to reasonable suspicion.
| -(While any probation officer could presumably conduct a compliance check,[2] in this case, the - agents’ conduct surpassed that contemplated by law when they entered Mr.. Julien’s bedroom and handcuffed both him and his female companion and escorted them out of the room before viewing the ammunition on the windowsill. The State did not present evidence of a tip of suspected criminal activity or other facts giving rise to reasonable suspicion prior to assembling the law enforcement team to conduct the compliance check. The presence of multiple officers from multiple law enforcement agencies for a *645 compliance check without pre-existing reasonable suspicion differs from jurisprudential affirmations regarding denials, of motions to suppress.[3] These factors go towards the determination of the unreasonableness of the search based on the scope of the intrusion and the manner in which it was conducted. See Malone, 403 So.2d at 1239. Likewise troubling is the suggestion that the State could make such a show of force outside the residence Land claim that the occupants’ reaction to it at 6:00 a.m. (looking outside twice and not immediately opening the door) could provide it with reasonable suspicion to conduct an otherwise illegal search. As such, the compliance check conducted on Mr. Julien served as a pretext for a warrant-less search with no reasonable suspicion that Mr. Julien was involved in criminal activity prior to knocking on the door.
Given the totality of the circumstances, the compliance check was unreasonably pretextual. Agents Bertrand and Hardy should not have been in Mr. Julien’s bedroom and thereby able to view the ammunition in plain sight. The legality of the search conducted thereafter was vitiated by the fact that neither Agent Bertrand, nor Hardy was assigned as Mr. Julien’s probation officer, which triggered La. C.Cr.P. Art. 895(13)(a). Once implicated, La. C.Cr.P. Art. 895(13)(a) requires that the warrantless search be conducted by the probation officer assigned to Mr. Ju-lien. It is undisputed that the probation officer assigned to Mr. Julien was not ■present.
, The State contends that this Court’s recent idling in State v. Brignac, 16-1160 (La.App. 4 Cir. 1/18/17), 229 So.3d 526, 2017. WL, 193157, wherein this Court upheld the warrantless search of a probationer’s residence supported by reasonable suspicion conducted by a probationer officer who was not the probation officer assigned to the defendant, is controlling. We disagree. Brignae is distinguishable in that prior to conducting the residence check on *646 the defendant, the assigned agent received a tip that the defendant was engaged in the sale of illegal narcotics. Id. The State presented no evidence in the present matter' of any tips, positive drug tests,[4] or anything else to establish reasonable suspicion that criminal activity was occurring prior to deciding to conduct a compliance check on | ¡¡Mr. Julien’s residence.
Additionally, the State asserts that La. C.Cr.P., Art. 703 and State v. Guidry, OS-1944 (La. 11/21/03), 862 So.2d 965, permits the inclusion of the weapons seized even if La. C.Cr.P. Art. 895 was violated. We disagree. In Guidry, the Louisiana Supreme Court found that technical violations or errors in search warrants did not automatically vitiate the constitutionality of the seized evidence. Guidry, 03-1944, 862 So.2d at 965. The present matter does not involve a search warrant. Moreover, the pretextual compliance check and the violation of La. C.Cr.P. Art. 895(13)(a), which was specifically amended by the Legislature to be more restrictive, constitutes more than a mere technicality. To regard it as such would invalidate the amendment and the safeguards in place to protect a citizen’s 4th Amendment rights. As such, the State’s argument lacks merit;
Further, the State avers that we should adopt a more nuanced approach and cites to State v. LeBlanc, 490 F.3d 361 (5th Cir. 2007), a case in which the federal appellate court found no Fourth Amendment violation followig a compliance check that yielded contraband. In LeBlanc, the court found suspicionless home visits set out by Louisiana’s statutory scheme permissible. When discussing home visits on probationers, the court stated:
Home visits, as defined under Louisiana law, as a condition of LeBlanc’s probation, and as conducted on these facts, do not constitute as invasive a burden on a probationer’s expectations of privacy as does a search. A probationer is subject to state supervision as part of the “special needs” doctrine, including verification of where he lives, and cannot expect to be free from “interpersonal contact” at his residence. Were we to impose a requirement that a probation' officer show reasonable suspicion of criminal activity before visiting a | ¡¡¡probationer at his home, supervision would become effectively impossible.
LeBlanc, 490 F.3d at 368-69. Ultimately, the court found that the officer did not cross the line into a search by asking to look around. Id., 490 F.3d at 370. Defendant opened the door to his bedroom to show the officer, wherein the weapon was seen in plain view. Id.
We find LeBlanc distinguishable. Foremost, LeBlanc was decided prior to the amendment of La. C.Cr.P. Art. 895. Further, in the instant case, the probation agents conducted something more than a “walk-through” when they executed an abrupt entry into.the bedroom where Mr. Julien and his female companion slept, handcuffed the two, and removed them from the room. Only then did the agents observe, the ammunition, which then provided them with the requisite cause to conduct a more thorough, warrantless search. However, because we found that the initial intrusion was an unreasonable subterfuge for a warrantless search, the agents should not have been in the position to view the ammunition. Therefore, the subsequent search, and seizure of the weapons was illegal. Thus, the trial court did not err or abuse its discretion by granting Mr. Julien’s Motions to Suppress. The writ is denied.

*647
DECREE

For the above-mentioned reasons, we find that the trial court did not abuse its discretion by granting Mr. Julien’s Motions to Suppress, as the compliance check was a pretext for a warrantless search without the probation officer assigned to Mr. Julien, which invalidated the search and seizure of the weapons. The writ is denied.
WRIT DENIED
DYSART, J., CONCURS FOR THE REASONS ASSIGNED BY J. LEDET
LEDET, J., CONCURS WITH REASONS

. Agent Bertrand testified that it was in conjunction with the U.S. Marshal's “Operation VR12” regarding violence reduction.

, La. C.Cr.P. Art. 895(A)(4) does not include the phrase "assigned to him," as contained in (13)(a).

. See Fields, 12-0674, 120 So.3d 309 (search and seizure upheld when conducted by two probation officers, including the probationer officer assigned to defendant, after defendant missed appointment with, assigned probation officer); State v. Vailes, 564 So.2d 778 (La. App. 2nd Cir. 1990) (upheld search and seizure conducted by the assigned probation officer and four other probation officers operating on a tip of criminal activity); State v. Angel, 44,924 (La.App. 2 Cir. 1/27/10), 31 So.3d 547 (search and seizure upheld conducted by assigned probation officer, two additional probation officers, and several Bossier Parish deputies following defendant's positive drug test); State v. Odom, 34,054 (La.App. 2 Cir. 11/1/00), 772 So.2d 281 (upheld search and seizure conducted by assigned probation officer, one additional probation officer, and a sergeant of the DeSoto Parish Narcotics Task Force wherein the task force provided tips of suspected criminal activity. The assigned officer stated that he normally conducts compliance checks alone); State v. Epperson, 576 So.2d 96 (La. App. 2nd Cir. 1991) (upheld search and seizure conducted by the assigned probation officer .and one additional probation officer following tips of criminal activity); State v. Drane, 36,230 (La.App. 2 Cir. 9/18/02), 828 So.2d 107 (upheld search and seizure conducted by the assigned probation officer, two additional probation officers, and an officer from the Franklin Parish Sheriff’s Department because they had an "arrest warrant for an occupant at probationer's residence, tips of criminal activity, and positive. drug test results); State v. Dimes, 16-0129 (La.App. 4 Cir, 6/22/16), 195 So.3d 1263 (search and seizure upheld conducted by two probation officers during a residence check); State v. Bolden, 09-3-3 (La.App. 5 Cir. 5/12/09), 13 So.3d 1168, 1170 (upheld search and seizure during residence check of defendant by the assigned parole officer. The court noted that ‘the search was only conducted by the" parole officer), See also State v. Shrader, 593 So.2d 457 (La. App. 2nd Cir. 1992) (noting that "it was departmental policy to have assistance when a probation officer intended to search or to effect an arrest.”).

. See State v. Drane, 36,230, p.7 (La.App. 2 Cir. 9/18/02), 828 So.2d 107, 112.